# Pittsburgh & Lake Erie Railroad Co. *v.* Clinton Iron & Steel Co., Appellant.

*Railroads—Demurrage charges—Industrial railroad—Steel company—Agency—Action against steel company—Allegata et probata—Reasonableness of charge—Directed verdict for plaintiff—Act of May 24, 1907, P. L. 229.*

1. In an action by a railroad company against a steel company to recover demurrage charges on cars delivered to the defendant, the defendant contended that while the statement of claim averred a contract between the plaintiff and defendant, the cars were in fact delivered not to defendant, but to an individual railroad company, which was an independent common carrier, on an interchange track under an agreement with such railroad company. It appeared that said railroad company performed services for the defendant and a small allied works on the same land; that it made no reports to the Interstate Commerce Commission, issued no bills of lading and did not conform to acts of congress regulating common carriers; that the employees of the said railroad and the defendant were paid at the same time and place by the same paymaster, and all the stock of such railroad was owned by stockholders in the defendant company. *Held,* the said railroad company was to be regarded as either the agent or part of the plant equipment of the defendant, that the defendant was liable on the agreement pleaded, and the trial judge properly directed a verdict for the plaintiff.

2. In such case where the demurrage charge was one dollar a day per car, there was no merit in the contention that where the defendant denied the reasonableness of such charge in the affidavit of defense, plaintiff's failure to submit proof of the reasonableness of the charge precluded it from recovering, where the reasonableness of such charge was recognized by the Act of May 24, 1907, P. L. 229, and where defendant offered no evidence that the charge was not reasonable.

Argued April 19, 1917. Appeal, No. 172, Oct. T., 1916, by defendant, from judgment of C. P. Allegheny Co., April T., 1912, No. 689, on directed verdict for plaintiff in case of Pittsburgh & Lake Erie Railroad Co. v. Clinton Iron & Steel Co. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover demurrage charges.

The facts appear in the following opinion by EVANS, J., sur defendant's motion for a new trial and for judgment n. o. v.:

The plaintiff brought suit against the defendant to recover demurrage charges on cars delivered loaded to the defendant and received from the defendant loaded and unloaded, for the time the cars were detained by the defendant over the free time allowed. The loaded cars were placed by the railroad company upon what was known as an interchange track in the Point Bridge Yard, and were taken by the South Shore Railroad Company from the interchange track to the track on which they were unloaded, and returned by the South Shore Railroad Company to the interchange track either loaded or unloaded. Originally the Clinton Iron & Steel Company had switching tracks on the land of the furnace company, and in 1892 the South Shore Railroad Company was incorporated and took over most of the switching tracks and enlarged to some extent its trackage, all of which was located upon the land of the Clinton Iron & Steel Company, a part of which land was leased by the steel company to the South Shore Railroad Company. The equipment of the South Shore Railroad Company consists of two locomotives and six flat cars. The flat cars are used exclusively in the plant of the Clinton Iron & Steel Company. The South Shore Railroad Company does all of the Clinton Iron & Steel Company's intra-mill service, for which it makes no charge. There is no means of access to the South Shore Railroad by the general public, and there is no work done or service performed by the South Shore Railroad Company except in connection with the Clinton Iron & Steel Company and another small allied works on the same land and the Pittsburgh & Lake Erie Railroad Company and the "Pan Handle" Railroad Company. It makes no reports to the Interstate Commerce Commission, issues no bills of lading, and in no way conforms to the requirements of the act

of congress regulating common carriers. Its superintendent, who controls the operation of the road, has also charge of the outside labor of the Clinton Iron & Steel Company in connection with the unloading and loading of cars shipped in and out and in the intra-mill service, for which he receives no compensation from the Clinton Iron & Steel Company. The employees of the South Shore Railroad Company and the Clinton Iron & Steel Company are both paid at the same time and place and by the same man. The movement of cars made by the South Shore Railroad Company engines are noted on the conductors' reports headed "Clinton Iron & Steel Company." The stock of the Clinton Iron & Steel Company during all this period was owned as follows: F. N. Hoffstott 50%; J. W. Friend 33 1/3%; C. W. Friend 8 1/3%; and T. W. Friend 8 1/3%. C. W. Friend and T. W. Friend were the sons of J. W. Friend. The South Shore Railroad Company during this entire period was owned in equal shares by J. W. Friend and F. N. Hoffstott. I should qualify the above statement to this extent, that J. W. Friend died in 1909, since which time his estate has owned the interest as above.

The plaintiff claims demurrage from April 1, 1907, to April 1, 1910, under the following tariff:

"Rule 1. (b) When cars are interchanged with minor railroads or industrial plants who perform their own switching service and who are not members of a Car Service Association, they handling cars for themselves or for other parties, an allowance will be made for the time necessary in their switching service in addition to the regular time allowed for loading or unloading as per paragraph (a), (which provides for forty-eight hours free time)."

"Cars interchanged with minor railroads, etc., are to be recorded as placed at the first 8 a. m. after actual placement on interchange track......the free time to be calculated from the first 7 a. m. after the recorded placement.

"If cars are delivered loaded and are unloaded and reloaded and returned to interchange tracks loaded, an additional forty-eight (48) hours for loading will be allowed.

"All cars returned to interchange tracks by 4 p. m. are to be recorded as released at 6 p. m. of the previous day."

From April 1, 1910, through the remainder of the time involved in this suit, tariffs were in effect fixing demurrage charges, providing as follows:

"Rule 3.—Computing Time.—(f) On cars to be delivered on interchange tracks of industrial plants performing their own switching service time will be computed from the first 7 a. m. following actual or constructive placement on such interchange tracks until return thereto."

"Rule 4.—Notification.—(c) Delivery of cars upon private or industrial interchange tracks, or written notice to consignee of readiness to so deliver, will constitute notification thereof to consignee."

There was no dispute as to the facts above stated. The defendant claims that this case should have gone to the jury for the reason that the plaintiff in its statement of fact that the cars in question were placed upon the interchange track under an agreement with the Clinton Iron & Steel Company, and it was a disputed fact as to whether there was such an agreement with the Clinton Iron & Steel Company. There was no dispute of the fact that the cars in question were placed upon the interchange track and taken from the interchange track by the South Shore Railroad Company, and that this had continued for a great many years, and whether or not this was done under an agreement with the Clinton Iron & Steel Company would depend upon the question whether the South Shore Railroad Company in accepting the delivery of the cars on the interchange track was the agent of the Clinton Iron & Steel Company.  In fact

every phase of this case, no matter how you view it, raises the one question,—was the South Shore Railroad Company an independent common carrier, or was it merely the agent or plant equipment of the Clinton Iron & Steel Company?

Another question was raised by counsel on the argument for motion for new trial, that the reasonableness of the demurrage charges was denied by the defendant in its affidavit of defense and no evidence offered by the plaintiff as to the reasonableness of those charges. The fact as to the time the cars were detained over the free time, and the number of cars so detained, are not in dispute, they are admitted. The only possible application which the denial of reasonableness could have to this case is that a dollar a day was not a reasonable charge. The Act of May 24, 1907, P. L. 229, recognized the reasonableness of a dollar a day for demurrage charges and forty-eight hours of free time, and in the absence of any evidence on the part of the defendant that this was not a reasonable charge, there was no question to submit to the jury.

It appears to me that this case is identical with the case of the Penna. R. R. Co. v. Josephine Furnace & Coke Co., 247 Pa. 99, and in view of that conclusion, any extended discussion of the law applicable to this case is unnecessary.

Verdict for plaintiff for $1,931.45 by direction of the court and judgment thereon. Defendant appealed.

*Error assigned,* among others, was in affirming plaintiff's point for binding instructions in its favor.

*George H. Calvert,* with him *Donald Thompson, George B. Berger* and *William A. Wilson,* for appellant.

*Thomas Patterson,* of *Patterson Crawford, Miller & Arensberg,* for appellee.

PER CURIAM, May 22, 1917:

This judgment is affirmed on the opinion of the learned court below overruling the defendant's motions for a new trial and for judgment non obstante veredicto.