**VAN-PAK, INC., Appellant,**

v.

**CAVALIER STORAGE CORPORATION,**
**Appellee.**

**No. 3620.**

District of Columbia Court of Appeals.

Argued Feb. 1, 1965.

Decided March 31, 1965.

Paul Reiber, Washington, D. C., for appellant.

Lester M. Bridgeman, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

In the fall of 1962 appellant contracted with the United States government to pack and ship, at government expense, household and personal goods of military personnel, pursuant to which it engaged appellee to render certain packing, storing and loading services at agreed rates. Cavalier performed these services for which $830.52 allegedly became due. When Van-Pak refused to pay these charges, Cavalier filed suit against Van-Pak which in turn counterclaimed for damages to certain of the goods shipped, allegedly caused by Cavalier's negligence in loading, packing and delivery. At trial Van-Pak interposed the defense of illegal bargain based upon Cavalier's failure (1) to file a tariff of its rates with the Interstate Commerce Commission and (2) to obtain a certificate of authority from the Commission as required by the Interstate Commerce Act.[1] The trial judge ruled that Cavalier did not violate the Act and awarded it judgment for the claimed amount. The counterclaim was decided in favor of Cavalier for failure of Van-Pak to carry its burden of proof as to the damaged items. This appeal by Van-Pak followed.

## (A) THE DEFENSE OF ILLEGAL BARGAIN

 It is well established that contracts in violation of the Interstate Commerce Act are void. Shirks Motor Exp. Corp. v. Forster T. & R. Co., 214 Md. 18, 133 A.2d 59 (1957). In its attempt to establish that its contract with Cavalier vio-

lated the Act, Van-Pak contended that the failure by Cavalier to file a tariff of its rates with the Interstate Commerce Commission was a violation. It is true that a contract to pay compensation in excess of the carrier's filed tariff rate is both without consideration and illegal.[2] It is equally true that a carrier, under certain circumstances not here involved, which has neither filed nor published any schedule of rates, cannot recover for interstate traffic if held to be a common carrier.[3] In the present case, all the services by Cavalier for Van-Pak involved goods for which the government was the actual shipper. Cavalier was aware of this fact at all times. Deviations from filed tariffs are authorized by Section 22 of the Interstate Commerce Act and are characterized as "Section 22 Quotations." By virtue thereof, a carrier may offer transportation to "special persons," including the government, at rates reduced from those provided under published tariffs. Section 22 also provides that these reduced rates may be entered into without regard to any other section of Part I of the Act, including Section (6) pertaining to tariffs filed with the Commission and posted. Great Northern Ry. v. United States, 312 F.2d 906, 911 (Ct.Cl.1963).[4] In the present case Cavalier's failure to file and post a tariff of its rates with the Commission for services actually performed for the United States government did not violate the Act.

Van-Pak next contends that Cavalier was not excused from failure to obtain a certificate of authority from the Commission by virtue of its operation solely with-

1. Van-Pak also contended at trial that Cavalier had violated the Act by failure to issue a bill of lading covering the goods shipped. This contention, although apparently abandoned upon appeal, has been considered and is found to be without merit.

2. Chesapeake & O. Ry. v. Westinghouse, Church, Kerr & Co., 270 U.S. 260, 46 S. Ct. 220, 70 L.Ed. 576 (1926); Chicago &

Alton R. R. v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033 (1912); Northern Valley Transfer, Inc. v. I. C. C., 192 F.Supp. 600, 604 (D.N.J.1961).

3. Pittsburgh & L. E. R. R. v. South Shore R. R., 264 Pa. 162, 107 A. 680 (1919); 49 U.S.C.A. § 317.

4. Cf., United States v. Georgia Public Service Commission, 371 U.S. 285, 292, 83 S.Ct. 397, 9 L.Ed.2d 317 (1963).

in the borders of a state under a state authorization for intrastate services.[5]

▮▮▮ If a carrier is not "lawfully engaged in operations solely within any State," it cannot obtain so-called "second proviso authority" and is not excused from the necessity of obtaining an I.C.C. certificate. In Hart v. I.C.C., 226 F.Supp. 635 (D.Minn.1964), it was argued, as here by Cavalier, that second proviso rights vest automatically when three conditions are present: (1) the carrier operates solely within one state; (2) the state has a board having authorization under state law to grant certificates of public convenience and necessity; and (3) the state board has in fact issued such a certificate to the carrier. In rejecting the automatic vesting of second proviso rights, the court in Hart said:

"There is nothing in the wording of the statute which requires the conclusion * * * that the second proviso rights vest by the statute; rather, it seems the better construction to view a Commission determination that the conditions have been met as a prerequisite to second proviso authority." Id. at p. 641.

In the case before us, there was no Commission determination that the conditions precedent to second proviso authority had been complied with, and therefore we are bound to hold that Cavalier was not excused on that ground from obtaining a certificate from the Commission. Nevertheless, Cavalier may have been relieved from the requirement to secure this certificate from the Commission by Section 303(b) (8) of the Act, which provides, in part:

"(b) * * * nor * * * shall the provisions of this chapter * * * apply to: (8) The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of any such municipality or municipalities, except when such transportation is under a common control, management, or arrangement for a continuous carriage or shipment to or from a point without such municipality, municipalities, or zone, and provided that the motor carrier engaged in such transportation of passengers over regular or irregular route or routes in interstate commerce is also lawfully engaged in the intrastate transportation of passengers over the entire length of such interstate route or routes in accordance with the laws of each State having jurisdiction * * *."

In Flanzbaum v. M & M Transportation Co., 203 F.Supp. 365 (E.D.N.Y.1962), aff'd per curiam 310 F.2d 737, the court said:

"The terms of 49 U.S.C.A. § 303(b) (8) * * * [exclude] the application of the Motor Carriers Act to transportation in interstate commerce that takes place wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of such a municipality or municipalities, in the absence of an administrative determination that the declared policy of the

5. 49 U.S.C.A. § 306(a): "(1) Except as otherwise provided in this section and in section 310a of this title, no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operations on any public highway, or within any reservation under the exclusive jurisdiction of

the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations; * * *." [This proviso— the so-called "second proviso"—was in force at all times pertinent to this appeal.]

Interstate Commerce Act necessitates regulation of such transportation.

\* \* \* \* \* \*

"If [the carrier's] participation in the [questioned] shipment was under an 'arrangement for a continuous carriage \* \* \* to or from a point without' the area of [the carrier's] local operation, the exclusion of § 303(b) (8) by its terms [would] not operate." 203 F.Supp. at pp. 368–369.

Here the only reference by the trial judge to this section of the Act was in his memorandum opinion, as follows: "Even if the plaintiff does not fall within the category of transportation companies exempt from the requirements of securing a certificate of convenience and necessity under 49 U.S.C.A. § 303(b) (8), it may nonetheless be excused from this requirement." The record does not reveal that the trial judge ever found as a fact that Cavalier was qualified for exemption under § 303 (b) (8) nor does it provide any factual basis which might authorize this court to make a determination that this section, together with its exceptions and proviso, would excuse Cavalier for its failure to secure an I.C.C. certificate. Accordingly, we must remand for that purpose. If upon further hearing, at which additional testimony may be presented by both sides on this point, Cavalier is found to qualify for the exemption, we rule that it should be entitled to recover upon its claim for services rendered for Van-Pak; but, if found not to qualify, its claim must be denied. It is suggested that the same trial judge should hold the further hearing, and he is hereby directed to enter judgment in accordance with the conclusions drawn from all the evidence.

## (B) THE COUNTERCLAIM

■ In order to establish liability on the part of a carrier for damages to merchandise in its possession, it is necessary to show at least that such merchandise was in a better condition when delivered to such carrier than upon receipt at its destination. Tuschman v. Pennsylvania R. R., 230 F.2d 787 (3rd Cir. 1956); Florence Banana Corp. v. Pennsylvania R. R., D.C. App., 195 A.2d 399 (1963). In the case at bar, Van-Pak did not present any testimony regarding the condition of the goods at the time of their delivery to Cavalier. Inventory sheets signed by the consignors at the time of delivery to Cavalier were submitted. However, the trial judge found that "it is impossible, in the absence of any evidence whatever on this point, to match the items claimed to have been damaged with any of the specific items listed" on the inventory sheets. We are in agreement with the trial judge's statement on this issue. The trial judge correctly held that Van-Pak did not carry the burden of proof establishing the responsibility of Cavalier for damage to the merchandise delivered by Van-Pak for which it sought recovery in the counterclaim.

Judgment on counterclaim affirmed; judgment on complaint reversed and remanded for further proceedings consistent with this opinion.