## BALTIMORE CITY COURT.

Filed October 19, 1928.

EDITH V. MUNDT
VS.
MAX DUBIN AND WIFE.

*E. Paul Mason* for plaintiff.
*Paul Berman* for defendant.

STEIN, J.—

This bill prays for a decree, requiring the defendants to specifically perform a written contract they made with the plaintiff, for the sale to them of an improved lot of ground in this city. Their defenses are: (a) Their exercise, before suit, of a right of recission; (b) that the contract is void because made and signed on Sunday, but dated as of the next Monday.

The first defense is not supported by the evidence; the other defense, apparently of first impressions in Maryland, depends upon the validity vel non of the above contract, which was made and signed on Sunday, dated the following Monday, and disaffirmed by the defendants on that Monday; with no action on their part ratifying it.

As common law did not forbid the making of a contract on Sunday, that, questioned here, is valid, unless forbidden by statute. Brantly on Contracts, 2nd Ed., Sec. 98, folio 216.

The first Sunday Law in Maryland was the Act of 1696, which went into effect on July 8 of that year; was made perpetual by the Act of 1704, Ch. 100, and repealed on October 26, 1723, by the Act of 1723, Ch. 16, Sec. 10, which is in force now.

The title to the Act of 1696 (supra), taken from Baskett's compilation is:

"An Act for Santifying and Keeping Holy the Lord's Day, commonly called Sunday."

Among other things, it provided:

"That from and after the publication of this law, no person or persons whatsoever within this province shall work or do any bodily labor or occupation upon the Lord's Day, commonly called Sunday."

The title to the Act of 1723, Ch. 16, supra, which consolidated the above Act with one punishing blasphemers, swearers and drunkards, was:

"An Act to punish blasphemers, swearers, drunkards and Sabbath Breakers," Section 10 of which contains the following, viz:

"No person whatsoever shall work or do any bodily labor on the Lord's Day, commonly called Sunday."

Other Sunday laws were passed thereafter, but none changed the above provisions quoted from the Act of 1723; which are in force now; codified in Sec. 483, Art. 27, folio 1118, 1 Bagby's Code, 1924.

The title of the Act of 1696, i. e., "An Act for Sanctifying and Keeping Holy the Lord's Day, Commonly Called Sunday," gave rise to the contention, that the Sunday Laws were unconstitutional, because in conflict with "Art. 36 of our Declaration of Rights guaranteeing religious liberty," the Court of Appeals, Thomas, J., held that Sunday statutes are "essentially civil regulations made for the government of man as a member of society."

Levering vs. Park Commissioners, 134 Md. 48 at 56. Following the opinion of Judge Boyd in Judefind vs. The State, 78 Md. 510 at 515.

"Looking to keeping the day sacred and as one of rest from secular employments."

The question for decision here is, does the above legislation change the common law above quoted, and make unlawful a contract to sell lands entered into and completed on Sunday; this depends upon the meaning of the word "work" in the Act of 1723, Ch. 16. Sec. 10, supra.

The Court of Appeals has not defined that meaning, but in the Levering case, supra, at 57; Thomas, J., in the language below laid down the rule for construing the Sunday law, and determining such meaning:

"What, then, is the meaning of the words work and labor used in the Sunday statute? Do they mean simple menial service, drudgery, or are they broader in scope and application? They are not technical words, and, consequently, are to be given their ordinary and natural signification, for in that sense the Legislature is presumed to have employed them. Courts are not warranted in searching out and applying refinements and subtle distinctions with respect to the meaning of ordinary words, either for the purpose of excluding a given case from the purview of a statute, or for the purpose of including it therein. Their plain and simple duty is to place a rational, natural and unrestrained interpretation upon the language of the Act so as to give effect to the obvious intent of the lawmakers."

Webster defines work thus: The act of working, toil, labor, travail, employment, occupation, operation, exertion. He further says: "Work is a general term for the exertion of the body and *mind*, and the product of such exertion.

\*   \*   \*   \*   \*

"Courts look beneath the surface, often disregarding mere names, in dealing with the substance and essence of things."

Murray's English Dictionary, Vol. 10, part 2, pages 292 et al., Sec. 24, gives as some of the meanings of the word "work," the following, viz:

"To do something involving effort of body or mind; to exert oneself physically or mentally for a definite purpose; especially in order to produce something "physically or mentally for a definite purpose."

Sec. 28: "To go through the process of solving a problem."

So that the "work" in the Sunday Law means physical and mental exertion.

That such was the meaning intended by the framers of the Act of 1723, supra, is shown by their omitting the word "occupation" in Section 10 of that Act, by the use of this word; the Act of 1906 forbade the doing on Sunday of the work and bodily labor of one's occupation. Omitting this word so enlarged the Act as to make unlawful mental work, as well as bodily labor.

Such meaning of the word "work" carries out the policy of the Sunday law; and by such construction the Court of Appeals "discharged its plain and simple duty, and placed a rational, natural and unrestrained interpretation of the language of the Act, and has given effect to the obvious intention of the lawmakers, to make Sunday 'the day of rest from secular employment.' "

Defendant's counsel cited Rickard's case of 98 Md. 136, as supporting his contention that the contract questioned here is void.

In this case, page 142, bot. Chief Judge McSherry said:

"No executory contract of sale made upon Sunday can be enforced. All parties agree to that proposition \* \* \*. A contract entered into on Sunday is a contract prohibited by the law."

This language, uttered by a judge of great learning and ability, while of much persuasive force, must be considered as applicable only to the question in the case then before the Court, which was the construction of the section of the Sunday law, relating to the sale of goods, wares and merchandise, Sec. 484 of Art. 27, and was not intended to construe Sec. 10, Ch. 16 of the Acts of 1723, supra.

In a brief, prepared with great care and skill, of unusual excellence and persuasive power, plaintiff's counsel cites as sustaining the validity of the contract cases from other States, notably: Rodman vs. Robinson, 134 N. C. 503 and Blome vs. Richards, 2 Ohio State, 387.

Rodman vs. Robinson, was a suit for the specific performance of a contract for the sale of land made on Sunday, which the Court held enforceable.

The North Carolina Act construed in that case, in the language of the writer of the brief, is "almost a verbatim copy of the English Statute of 29 Charles II," provides that on the Lord's Day "no person shall do or exercise any labor, business or work of his ordinary calling, upon penalty that every person so offending shall forfeit and pay one dollar." The Act restricts the work forbidden to that of one's ordinary calling, in this respect, is much narrower in scope than the Maryland law.

Blome vs. Richards is a bill for specific performance of a contract of sale of land, which was executed on Sunday, but dated on a week day—substantially the instant case. The Ohio Court held that contract enforceable; the Ohio statute forbade "Sunday sporting, rioting, quarreling, hunting, fishing or *common labor*"; does not contain the word "work"; its scope is much narrower than that of the North Carolina Act, and the construction of the Ohio Court is not persuasive.

Whatever other jurisdictions may hold, however powerful and persuasive the reasons therefor may be, they are not to be followed in a case involving "the construction of a Maryland Statute," which is determined by the policy of the Maryland law, and where that policy is "to make Sunday a day of rest from secular employment," it cannot be carried out either; (a) by

making Sunday a day of rest only from physical work; or (b) a day of rest from one's ordinary occupation; such construction would leave the people free either (a) to engage in all kinds of mental work, or (b) in any works physical or mental, not one's ordinary employment.

Plaintiff's counsel also urged that the Sunday law only prohibits the doing of work and bodily labor, of one's ordinary and usual occupation, and does not prohibit a single act.

If one act is not inhibited, why should two be; if two, why three; when would the Act operate? One act as in this case may occupy several hours and be more wearying than a number of acts taking a much shorter time.

A criminal statute is not to be so construed as to make the lawfulness of the Act forbidden to depend, either upon the time taken in doing the act, or in the number of times it has been done by the same person.

To carry out the policy of the Sunday law, that it be a day of rest, all kinds of work mental and physical must be unlawful (save those of necessity and charity excepted by the Act), whether the work be physical work or mental work; whether one's ordinary occupation, or not; whether a single act not one's occupation, or many such acts. The plaintiff's contentions, that neither mental work nor work not one's usual occupation is unlawful, would result: Either in allowing the doing on Sunday of any kind of work, physical or mental, not one's ordinary occupation. The first construction permits teachers, salesmen, members of all professions to pursue on Sunday their ordinary occupations, if not accompanied by physical exertion; the other construction permits the doing on Sunday of work or bodily labor, physical or mental, not the ordinary occupation, provided that the so doing would not result in two occupations, one followed during the week, the other followed on Sunday.

Under either construction, Sunday would not be a day of rest from secular employment, and a law in force for more than two hundred years would be useless.

A decree will be signed dismissing the bill, the defendants to pay costs.