SHIRKS MOTOR EXPRESS CORPORATION
*v.* FORSTER TRANSFER & RIGGING
COMPANY, INC.

[No. 202, October Term, 1956.]

20

*Decided June 18, 1957.*

*Motion for rehearing, filed July 18, 1957, denied September 24, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and KINTNER, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*William B. Dulany,* with whom were *Baldwin, Jarman & Norris* on the brief, for appellant.

*Edwin A. Gehring,* with whom was *James J. Doherty* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This case presents for decision the question of proper charges for transportation of freight.

During the summer of 1953 the United States Government, Department of the Army, (the Government), accepted bids "for furnishing the necessary drivers, riggers, helpers, packers, etc., and tractors, trailers & rigging equipment, in sufficient quantities to pack, package and transport * * * Signal Corps and miscellaneous equipment and Supplies stored at Utility Electronics Corporation, 231 Grant Avenue, East Newark, New Jersey", to be delivered F. O. B. destination to various points.

Appellant, Shirks Motor Express Corporation, and appellee, Forster Transfer and Rigging Company, Inc., were both interstate common carriers by motor vehicle. Appellee made a bid on the Government's proposal and was awarded the contract to move equipment from the Electronic plant to various destinations. Appellee itself transported substantial portions of the freight under this contract to Baltimore. The contract specified, however, that a portion of the freight was to move to Tobyhanna Signal Depot, Tobyhanna, Pennsylvania, and to New Cumberland General Depot, New Cumberland, Pennsylvania.

Appellee did not hold authority from the Interstate Commerce Commission, (the Commission), to perform the required transportation to Tobyhanna, Pennsylvania, or to New Cumberland, Pennsylvania. Appellant held a certificate of public convenience and necessity from the Commission authorizing it to transport general commodities from East Newark, New Jersey, to Tobyhanna and New Cumberland, Pennsylvania. Appellee requested appellant to transport the seven truckloads of freight, the subject of this case, two of which were destined to Tobyhanna and five of which were

destined to New Cumberland. Appellee loaded the freight on appellant's vehicles and executed shipping orders on the bill of lading forms customarily used by motor carriers, with respect to each of the seven truckloads of freight.

Not only did the appellant know that the transportation was for the Government but knew as much as did the appellee concerning the identity of the commodities, which were packed in sealed containers prior to shipment. In addition the appellee, on two occasions before the subject transportation occurred, conveyed to appellant all information in its possession regarding identity of the freight, whereupon appellant agreed to transport the freight at $.44 cwt. to Tobyhanna Signal Depot. This rate was modified to $.65 cwt. at the time of or after the movement occurred. Appellant also agreed to transport the freight at $.50 cwt. to New Cumberland, Pennsylvania. The agreed rate was not just for "nuts and bolts" (five of the seven shipping orders herein described the commodities as "nuts and bolts, etc.") but for the miscellaneous equipment, supplies, etc., located at the Utility Electronics Corporation, East Newark, New Jersey, regardless of identity of individual items. Relying on this agreed rate, appellee made its bid to the Government and was awarded the contract to move all equipment from the Electronics plant to various destinations. These rates, to which appellant agreed and on which appellee relied when making its bid, as later modified, were paid in full by appellee.

Appellee admitted that it was the shipper on each of the movements and that it was to prepay the freight charges on each of the movements. Appellant admitted, for the purpose of this appeal, that it knew beforehand that it would be transporting freight which appellee had contracted to move for the Government, though it did not know the terms and contents of the contract.

Appellee described the commodities in the shipping orders as "Nuts and Bolts" in two instances, and as "Nuts, Bolts, etc." in five instances. Appellant billed the traffic as "Nuts and Bolts" and appellee paid to appellant those charges. Appellant learned that the freight did not consist entirely of nuts and bolts. The commodities shipped to

Tobyhanna were chairs and tables "and other articles classified same or lower", and those shipped to New Cumberland were electrical appliances or instruments "and other articles classified same or lower". According to testimony of appellant's witness, this resulted in additional charges due appellant totaling $1,336.06, plus interest from August 29, 1953. The issue of damages, however, was not finally determined by the trial judge.

Appellant's witness testified that the shipping orders constituted the contracts between appellant and appellee, and that it was bound by its tariffs on the movements as a matter of law because it was not performing carriage for the Government within the purview of Section 22, Part I, Interstate Commerce Act, hereinafter referred to as "the Act", (49 U.S.C.A. Section 22), hereinafter referred to as "Section 22". Appellant therefore seeks payment of its published tariff rate based on a corrected description of the commodities.

Suit was therefore entered for appellant, as plaintiff, against appellee, as defendant, for the rates as specified in the tariffs in effect at that time. Appellee claimed that, as Section 22 governed, its contract rates with appellant were the correct charges which it had paid. The trial judge sustained the position taken by appellee holding that appellant was not governed by its tariffs on the shipments in question, as Section 22 applied, and entered judgment for the appellee, defendant, for costs. From that judgment, appellant, plaintiff, appeals.

It is admitted by all the parties that an interstate common carrier is required to collect its published tariff rate for freight transportation unless the transportation falls within the exemption set forth in Section 22. *United States v. Interstate Commerce Commission,* 352 U. S. 158, 77 S. Ct. 241, 1 L. Ed. 2d 211, decided December 17, 1956.

It is provided by the Act, Part II, Section 217 (b), (49 U.S.C.A. Section 317 (b), (hereinafter referred to as "Section 317 (b)") :

"No common carrier by motor vehicle shall charge or demand or collect or receive a greater or

less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates, fares, and charges specified in the tariffs in effect at the time; and no such carrier shall refund or remit in any manner or by any device, directly or indirectly, or through any agent or broker or otherwise, any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities for transportation in interstate or foreign commerce except such as are specified in its tariffs: *Provided*. That the provisions of sections 1 (7) and 22 of this title shall apply to common carriers by motor vehicles subject to this part."

Section 22 provides in part: "Nothing in this chapter shall prevent the carriage, storage, or handling of property free or at reduced rates for the United States, State, or municipal governments * * *."

The shipper, the carrier, and the consignee are all trustees for the public and no complication arising out of agreements between them should defeat the purpose of the Act in requiring the full and exact payment of the filed, posted and published tariff. *Great Northern Railway Co. v. Hyder* (D. C. W. D. Wash.), 279 F. 783. A motor carrier of freight in interstate commerce is required to collect and the shipper to pay the undercharge figured on the charges specified in the controlling tariff rates. Both the shipper and the carrier are bound to take notice of such rates. Neither ignorance nor misquotation will justify the paying of less than the effective tariff rate. Interest on such undercharge, from the date of the occurrence, is allowed on general principles without reference to the local law of the state. *T. & M. Transportation Co. v. S. W. Shattuck Chemical Co.* (C. C. A. 10th), 158 F. 2d 909, and cases there cited.

The real character of the commodity shipped and not that erroneously described on shipping documents is controlling in determination of the applicable rates. *Allan B. DuMont Labs., Inc. v. York Motor Express Co.,* 62 MCC 53, 54-55;

*Graver Corp. v. Southern Railway Co.,* 156 ICC 619, 621; *Hughes Transportation, Inc. v. United States* (U. S. Ct. of Claims), 121 F. Supp. 212. The Act is remedial legislation and should be given a liberal interpretation. For the same reason exemptions from its sweep should be narrowed and limited to effect the remedy. *Piedmont & Northern Railway Co. v. Interstate Commerce Commission,* 286 U. S. 299, 311-312, 52 S. Ct. 541, 76 L. Ed. 1115.

The trial judge and the appellee rely strongly on case of *United States v. Bethke* (D. C. Colo.), 132 F. Supp. 22. There, an action was brought by the Government to recover claimed freight overcharge collected by defendant's, Bethke's, truck lines on a freight shipment. Pacific and Atlantic Shippers' Association, (Pacific), a freight forwarder, was a party to a contract with the Government pursuant to Section 22 and originally received the freight shipment. Pacific in turn, as freight forwarder, shipped the freight by rail to Chicago, thence through Independent Truckers, Inc., from Chicago to Denver. Bethke, a common carrier, picked up the freight at Denver and delivered it by its truck line to Fort Collins, Colorado. Bethke charged the standard rates in accordance with the tariff approved by the Commission. The Section 22 rates contemplated by the contract between the Government and Pacific were not contained in any tariff published by the Commission. No notation of the special contract between Pacific and the Government appeared on the bill of lading or other papers which Bethke received. Bethke received the shipment without knowledge of the special rates chargeable under the contract and was required by Independent Truckers, the intermediate carrier, to charge the regular published rates. Such regular rates were assessed from Philadelphia to Denver and Bethke assessed his regular rates from Denver to Fort Collins. The Government later presented a claim for overcharge to defendant on the theory that the all rail rate to which it was entitled under its Section 22 contract with Pacific was the correct charge, and sued for the overcharge. Defendant contended that any action the Government had was against Pacific and not against him; that he was the terminal carrier and not a party

to any through rates from Philadelphia to Fort Collins or any Section 22 quotation. He also contended that he was entitled to collect his full tariff rate for shipment from Denver to Fort Collins; that he had no notice and was charged with no notice of the special Section 22 agreement between the Government and Pacific; that he was not bound by any such agreement; and that he had the right to charge the regular tariffs. District Judge Christenson, in finding for Bethke, stated that he could find nothing in the statutes or decisions which indicated that the contract between the Government and Pacific was binding upon other carriers who handled the shipment in the absence of some agreement, expressed or implied, or unless there was some showing that the carriers had notice of the Section 22 contract when handling the goods. He found that there was no privity of contract between Bethke and the Government, or conscious acquiescence in that contract.

The trial judge in the instant case found from the facts here that there was acquiescence by the appellant in the contract between the appellee and the Government and therefore Section 22 applied and no additional freight charges could be collected and therefore entered judgment for the appellee for costs. The Bethke case is not in point here because there Pacific was a licensed freight forwarder while the appellee here was not.

Under the provisions of Section 217 (b), above quoted, the provisions of Section 22 shall apply to common carriers by motor vehicles. As to the freight actually transported by the appellee, it was a common carrier. Chapter 8, Section 206 (1) of the Act, 49 U.S.C.A. Section 306 (1), provided in part:

> "* * * no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations, * * *."

Therefore, as it is admitted that the appellee had no permit from the Commission to transport the freight here in question, it was not a common carrier as to that freight and, therefore, as a common carrier could not enter into a Section 22 contract with the Government to transport the goods here in question. The Act, Part IV, Chapter 13, Section 410 (a), 49 U.S.C.A. 1010 (a), provided in part:

> "No person shall engage in service subject to this chapter unless such person holds a permit, issued by the Commission, authorizing such service, * * *."

By the Act, Part IV, Chapter 13, Section 402 (5), 49 U.S.C.A. 1002 (5), a freight forwarder is defined as

> "any person which (otherwise than as a carrier subject to chapters 1, 8, or 12 of this title) holds itself out to the general public as a common carrier to transport or provide transportation of property, or any class or classes of property, for compensation, in interstate commerce, and which, in the ordinary and usual course of its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of such property, and performs or provides for the performance of break-bulk and distributing operations with respect to such consolidated shipments, and (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, and (C) utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to chapters 1, 8, or 12 of this title."

For further authority that the appellee in the instant case was acting as a freight forwarder of the goods here in question, see *Lifschultz v. United States,* 144 F. Supp. 606, 611-612. See also *Nashville, C. & St. L. R. Co. v. Tennessee,* 262 U. S. 318, 323, 43 S. Ct. 583, 67 L. Ed. 999.

It is provided in part by the Act, Part IV, Chapter 13, Section 405 (c), 49 U.S.C.A. 1005 (c):

"* * * the provisions of section 22 of this title (relating to transportation free or at reduced rates), insofar as such provisions relate to transportation or service in the case of property, shall apply with respect to freight forwarders, in the performance of service subject to this chapter, with like force and effect as in the case of the persons and service to which such provisions are specifically applicable."

Reading these sections together, it is evident that the appellee acted as a freight forwarder in reference to the freight here in question. In *Shulman, Inc., Extension—Massachusetts,* No. FF-211 (Sub. No. 1), 11 F.C.C. 102, applicant, which operated as an interstate motor carrier within Massachusetts, sought a permit authorizing an extension of its service as a freight forwarder between points in New York, Pennsylvania, New Jersey and Massachusetts. The Commission held that since the applicant was presently engaged as a motor carrier subject to Part II of the Act in transporting property in interstate commerce in Massachusetts, the Commission could not issue it a permit to operate as a freight forwarder since Chapter 13, Section 410 (c), 49 U.S.C.A. 1010 (c), expressly forbids the issuance of any permit to operate as a freight forwarder to any common carrier subject to Part I, II, or III of the Act.

The appellee, having no permit to act as a freight forwarder, could not enter into a Section 22 contract with the Government for the transportation of the freight here in question, or in the instant agreement with the appellant. The appellee, in making the agreement with the appellant for transportation of the goods here in question, acted as a freight forwarder without a permit, which was in violation of the Act. Contracts in violation of the Act are void. *Brandon v. Lichty,* 133 Fla. 520, 182 So. 897; *Pennsylvania Railroad Co. v. Cameron,* 280 Pa. 458, 124 A. 638, 640; *Illinois Central Railroad Co. v. Henderson Elevator Co.,* 226 U. S. 441, 33 S. Ct. 176, 57 L. Ed. 290. In *Bankers & Shippers Ins. Co. of N. Y. v. Blackwell,* 255 Ala. 360, 51 So. 2d 498, decided February 8, 1951, a suit was brought by the appellee,

a motor carrier, against the appellant on an insurance policy for a claim made under that policy. The loss occurred while the carrier was making a shipment between two points without having secured the required permit from the Commission. The Supreme Court of Alabama there held that the hauling was illegal and the appellee's only insurable interest was dependent on an illegal contract and that that illegal contract conferred on the appellee no right on which to base his claim of an insurable interest, and rendered judgment for the appellant. The Alabama Court set out the same rule as to contracts entered into in violation of license provisions, regulatory in nature and affecting the legal qualifications to contract, as was stated by this Court in *Schloss v. Davis,* 213 Md. 119, 131 A. 2d 287, and *Glaser v. Shostack,* 213 Md. 383, 131 A. 2d 724.

From the agreed statement of facts in this case, it appears that the appellant here knew that the appellee was a common carrier as to part of the goods which it contracted with the Government to transport. Being a common carrier, the appellant must have known that the appellee could not also have a permit as a freight forwarder under the provisions of Chapter 13, Section 410 (c), 49 U.S.C.A. 1010 (c), and, therefore, its agreement with the appellee was illegal and in violation of the Act. In *Messick v. Smith,* 193 Md. 659, 69 A. 2d 478, 72 A. 2d 249, the plaintiff, a contractor, entered into an agreement to build a house for Messick, the defendant, who was a discharged veteran. The price recited in the contract was much lower than that agreed upon originally by the parties. The price was so recited in the contract in order to induce the Federal Housing Administration to grant Messick a priority for building materials, under a provision which gave priority to veterans. In a suit by Smith to enforce a mechanic's lien on the house, according to the terms of the true agreement between the parties, it was held in an opinion by Judge Markell, who went into the question of *pari delicto* in detail, that the plaintiff was barred from suing thereon on the ground that when the plaintiff and defendant participated in fraudulent or illegal contracts contrary to law or public policy, he was in *pari delicto* and the plaintiff could not

maintain a suit in law or in equity directly arising out of misconduct. In *Van Meter v. Wilkinson.* 187 Md. 492, 50 A. 2d 557, the same holding was made in reference to a contract in violation of a Federal statute. See also *Bayne v. Suit,* 1 Md. 80; *Gotwalt v. Neal,* 25 Md. 434; *Roman v. Mali,* 42 Md. 513; *Rickards v. Rickards,* 98 Md. 136, 56 A. 397.

The appellant, having entered into this illegal contract with the appellee, was in *pari delicto* with the appellee, and must take the consequences. He has already received payment of the price of hauling which he agreed upon, and as to that the Court must leave the parties in *statu quo*. But since the hauling was in violation of the statutes and regulations, we think he cannot invoke the Court's aid in recovering the full published tariff rate in a transaction which was illegal from its inception, and as to which he stood in *pari delicto*. The judgment will be affirmed.

*Judgment affirmed, with costs.*