**Aaron FLANZBAUM, doing business under the trade name and style of Davaar Industries, Limited, Plaintiff,**

v.

**M & M TRANSPORTATION COMPANY, Defendant.**

**Civ. No. 17751.**

United States District Court
E. D. New York.

March 15, 1962.

---

Julius Garrell, New York City (Harry Merwin, New York City, of counsel), for plaintiff.

Abraham Burstein, New York City (Zelby & Burstein, New York City, and Seymour Teitelbaum, Brooklyn, N. Y., of counsel), for defendant.

DOOLING, District Judge.

Plaintiff shipper sues in the right of an alleged initial common carrier to recover against an alleged connecting carrier under the Carmack Amendment (49 U.S.C.A. §§ 20(12), 319) for the amount of damages the initial carrier was required to pay the plaintiff shipper for injuries to the shipper's goods allegedly sustained on the line of the connecting carrier. The facts, separately found, are plain.

Plaintiff delivered about a thousand storage batteries in 1947 to Ezra Klein, doing business as Terminal Trucking Co., for repacking and further handling. Klein was then in the business of rendering packing services and also was a local common carrier by motor vehicle. Klein had not been granted either a certificate of public convenience and necessity or an exemption by the Interstate Commerce Commission (49 U.S.C.A. §§ 306(a) (1), 303(b) (8), 304(a) (4a)).

Plaintiff sold two lots of the batteries located at Klein's establishment to Auburn Tire Sales of Cranston, Rhode Island and went to Klein to arrange shipment. Two bill of lading forms were borrowed from a railroad company and Klein obliterated the railroad's name, without substituting his own firm name, and filled up the forms to show receipt of the batteries "at Terminal Trucking Co." from plaintiff, consigned to Auburn Tire Sales; the "delivering carrier" was filled in as "Terminal Trucking Co." Plaintiff, as shipper, signed the bills of lading; it is not shown that anyone ever signed or stamped them, or any counterpart copies, as an issuing carrier. For each bill of lading plaintiff also gave Klein an invoice, and a sight draft drawn to the order of plaintiff's bank on Auburn Tire Sales payable at its bank in Providence. Klein engaged defendant M & M, a duly authorized common carrier by motor vehicle, to carry the batteries to Cranston; M & M picked the batteries up at Klein's warehouse along with the bills of lading, invoices and sight drafts and carried them to Cranston. On November 6, 1947 M & M delivered the two lots of batteries to the shop and warehouse of Auburn Tire Sales, after the Providence Bank had "paid" the drafts on presentation and had stamped the bills of lading "paid".

It was almost at once discovered that most of the batteries had been damaged en route. The Providence Bank promptly "cancelled" its "payment" of the sight drafts. Plaintiff lost his sale to Auburn Tire Sales and resold the batteries at a lower price. Plaintiff paid Klein his carriage charges, nevertheless, and Klein paid M & M its regularly filed tariff charges in full, without any division of rate as between Klein and M & M. It does not appear whether M & M's rate was more than, less than, or equal to Klein's charge of $250 to the plaintiff for the delivery.

In December, 1948 plaintiff sued Klein on the bills of lading and recovered a judgment in this Court against Klein in June 1955 for $6,902.62. It was found that Klein had acted as a common carrier, had issued the bills of lading to plaintiff and had employed M & M as its agent to carry and deliver the goods; it was found, further, that the goods had been delivered to Klein in good order and were delivered by Klein, through its agent M & M in Cranston in damaged condition. During that action Klein, in 1953–1954, sought to bring M & M in as a defendant by third-party complaint, alleging that M & M was the only carrier involved and that Klein had acted as a warehouseman only. This Court decided that under the lawful terms of the bill of lading the claim-over was barred by lapse of time (49 U.S.C.A. § 20(11)).

In order to collect his judgment plaintiff levied execution on Klein's claim under 49 U.S.C.A. § 20(12) as initial carrier against M & M as connecting carrier. When plaintiff sought an order in the Queens County Supreme Court for leave to sue M & M on Klein's claim

(N.Y. Civil Practice Act, § 687–a, subd. 6), plaintiff was defeated by the assertion that Klein's claim against M & M was barred of enforcement by this Court's order dismissing as stale Klein's third party complaint. Plaintiff overcame this obstacle by successful appeal to the Appellate Division, Second Department; that Court held, *inter alia*, that the third party claim of Klein against M & M had been one made by Klein as alleged shipper and had rested on 49 U.S.C.A. § 20(11), whereas the claim presently put forward was the different claim of Klein as initial carrier under 49 U.S.C.A. § 20(12) (Flanzbaum v. Klein, 3 A.D.2d 749, 160 N.Y.S.2d 169).

The present action followed. In it plaintiff obtained judgment, without a full trial of all issues, for the amount of his judgment against Klein, plus an award for the counsel fees incurred by Klein in the earlier case. The resulting judgment was reversed, however, for fuller trial on all the issues properly presented other than those affecting damages (2 Cir., 286 F.2d 500).

■ On the facts as found after trial there would be no question of plaintiff's right to recover (in the right of Klein) if there existed the initial and connecting carrier relationship contemplated by 49 U.S.C.A. §§ 20(11)–(12), 319. Defendant objects that Klein, even if a common carrier, was either not a carrier subject to federal regulation and hence not within the Carmack Amendment at all, or if a carrier subject to federal regulation, had not been granted the required certificate of public convenience and necessity, and could not lawfully issue, or claim rights under, an interstate through bill of lading or under the Carmack Amendment. (Cf. Shirks Motor Express Corp. v. Forster Transfer & Rigging Co. Inc., 1957, 214 Md. 18, 133 A.2d 59). Beyond that, it is argued, generally, that Klein was not a common carrier at all and performed no carrier services but was a shipper or shipper's agent without rights under 49 U.S.C.A. § 20(12) and barred of his rights, if any, under 49 U.S.C.A. § 20(11) by lapse of time and the adjudication in the earlier action that his third-party claim as shipper was belated.

Plaintiff answers that Klein issued and was held liable on the bills of lading; that Klein's issuance of the bills and the consequent imposition of liability were alike under 49 U.S.C.A. § 20(11); and that recovery here in Klein's right, follows from those facts coupled with the evidence that the injury to the batteries was sustained on M & M's line. Sufficient transportation service to make Klein a proper initial carrier under the Carmack Amendment it is claimed exists in the making of the through contract of carriage (United States v. Mississippi Valley Barge Line Co., 8th Cir. 1960, 285 F.2d 381), in preparing the batteries for shipment and in participating in their loading for carriage (But see Georgia Southern & F. Ry. v. Tifton Produce Co., 1934, 49 Ga.App. 530, 176 S.E. 89). No disabling illegality exists in a purely local carrier's local initiation of a through interstate carriage, it is claimed; on the contrary, it is argued, 49 U.S.C.A. § 20 (11) requires the issuance of a bill of lading for every interstate shipment and attaches to the acceptance of a shipment for interstate carriage the liabilities of, § 20(11) and the rights of indemnity of § 20(12) whether the initial carrier is "certificated" or not, for, it is claimed, it need not be "certificated" if its participation in the shipment is purely local (See e. g., Shultz v. Skaneateles R. R. Co., 1910, 66 Misc. 9, 122 N.Y.S. 445, aff'd., 4th Dept. 1911, 145 App.Div. 906, 129 N.Y.S. 1146).

■ Klein's local operation has not been shown generally to be subject either to state or to federal regulation notwithstanding its probable content of recurrent interstate and foreign commerce. The terms of 49 U.S.C.A. § 303(b) (8) establish not a basis of obtaining a determination of exemption under 49 U.S.C.A. § 304(a) (4a) but rather a clear exclusion of the application of the Motor Carriers Act to transportation in interstate commerce that takes place wholly within a municipality or between con-

tiguous municipalities or within a zone adjacent to and commercially a part of such a municipality or municipalities, in the absence of an administrative determination that the declared policy of the Interstate Commerce Act necessitates regulation of such transportation. The exclusion of § 303(b) (8) is operative only if such a carrier is lawfully engaged in intrastate transportation over the entire length of its interstate routes "in accordance with the laws of each State having jurisdiction". Klein is not shown, generally, to have been outside the local-service exemption of New York Public Service Law, Article 3–B, McKinney's Consol. Laws, c. 48, § 63–i, subd. 3(c). See Cy Ruchman, Inc. v. Saland, City Ct. 1949, 102 N.Y.S.2d 407; Matter of Oswego Transportation Lines, Inc. v. Feinberg, 3rd Dept. 1959, 7 A.D.2d 268, 181 N.Y.S.2d 1007.

The evidence and admissions bearing on the nature and scope of Klein's general common carrier operation are, indeed, meagre; they sufficed to show that, Klein was a common carrier to the piers and, more vaguely, in the metropolitan area generally. Plaintiff's case did not disclose general illegality in Klein's operation nor did defendant adduce evidence beyond the transaction in question as a basis for its contention that Klein could not lawfully act as it did unless it held a certificate of public convenience and necessity issued by the Interstate Commerce Commission and had filed tariffs to cover interstate carriage and, perhaps, joint rates with M & M as well.

■■ If Klein's participation in the battery shipment was under an "arrangement for a continuous carriage * * * to or from a point without" the area of Klein's local operation, the exclusion of § 303(b) (8) by its terms did not operate. But here no transportation was performed, though it was undertaken, by Klein and an activity of this sort, though involving assumption of common carrier responsibilities to the shipper (Railroad Co. v. Pratt, 1874, 22 Wall. 123, 89 U.S. 123, 22 L.Ed. 827; Reid v. Fargo, 1916, 241 U.S. 544, 550–551, 36 S.Ct. 712, 60

L.Ed. 1156; Wiener v. Compagnie Generale Transatlantique, 2nd Cir. 1932, 61 F. 2d 893; Slutzkin v. Gerhard & Hey, Inc., 1st Dept. 1921, 199 App.Div. 5, 14–15, 191 N.Y.S. 104; Wald-Green Food Corp. v. Acme Fast Freight, Inc., Mun.Ct.1951, 200 Misc. 679, 103 N.Y.S.2d 768, aff'd., App. Term 1st Dept. 1951, 200 Misc. 687, 110 N.Y.S.2d 514), does not of itself impose the duty to obtain a carrier certificate. Acme Fast Freight, Inc. v. United States, S.D.N.Y.1940, 30 F.Supp. 968, 973, aff'd., 1940, 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993; Acme Fast Freight, Inc. v. United States, S.D.N.Y.1957, 154 F.Supp. 239, 240. Implicit in the treatment of the consolidating freight forwarder as outside the carrier certification requirement is the related notion that such a forwarder is, even under present-day forwarder regulation (49 U.S.C.A. § 1001 et seq.), essentially a shipper as to the line-haul carriers he hires, even for Carmack Amendment purposes, rather than a carrier effecting with the line-haul carrier a common arrangement for through carriage. Chicago, Milwaukee, St. Paul & Pacific R. R. v. Acme Fast Freight, Inc., 1949, 336 U.S. 465, 69 S.Ct. 692, 93 L.Ed. 817; cf. Lifschultz v. United States, S.D.N.Y.1956, 144 F.Supp. 606, and at 611. The more complex relation seen in United States v. Mississippi Valley Barge Line Co., 8th Cir. 1960, 285 F. 2d 381, involving performance of carrier service by the carrier contractually undertaking responsibility for a through carriage originating and terminating on another carrier's line and passing also over the contracting carrier's line, becomes a "common arrangement" for through carriage because it effects a union of carrying services. In the absence of some union of transportation services, the inference from Georgia Southern & F. Ry. v. Tifton Produce Co., 1934, 49 Ga.App. 530, 176 S.E. 89, is that something other than an initial carrier function under 49 U.S.C.A. § 20(11) is present and, presumably, it is the ill-defined, and unregulated, function of a non-consolidating forwarder who assumes carrier responsibility toward the shipper

and a shipper status, rather than an initial carrier status, toward the line-haul carrier who performs the transportation services.

Here Klein's relation to the shipment, apart from his bill of lading undertaking, was too slight to make him an initial carrier as to this shipment. Such cases as John Lysaght, Ltd. v. Lehigh Valley R. R. Co., S.D.N.Y.1918, 254 F. 351, aff'd., after trial, sub nom. Lehigh Valley R. R. Co. v. John Lysaght, Ltd., 2nd Cir. 1921, 271 F. 906, which dealt with the resumption of carrier status after an interval during which the carrier was considered a warehouseman because it had no terminal delivery orders, involve transportation duties the performance of which is in abeyance or expectancy but which are the gist of the carrier's general relation to the shipper. That does not signify that one who is a warehouseman in the conventional sense becomes an initial carrier vis-à-vis the line-haul carrier he engages when he receives an order to ship and formally undertakes a transportation duty that he cannot lawfully perform himself and must wholly delegate to a "certificated" carrier. Were transportation by Klein involved, it would necessarily be under a "common arrangement" (Cf. United States v. Munson Steamship Line, 1931, 283 U.S. 43, 51 S.Ct. 360, 75 L.Ed. 830; General Accident Fire & Life Assur. Corp. v. Piazza, 1958, 4 N.Y.2d 659, 666–669, 176 N.Y.S.2d 976, 152 N.E.2d 236; see United States v. Mississippi Valley Barge Line Co., 8th Cir. 1960, 285 F.2d 381, 391–393) and subject to regulation (49 U.S.C.A. §§ 302(a), 303(b) (8)) and the certification requirement (49 U.S.C. A. § 306(a) (1)); without certification the advantage of the Act would not be available to Klein (Cf. Shirks Motor Express Corp. v. Forster Transfer & Rigging Co., 1957, 214 Md. 18, 133 A.2d 59) even though its burden could be imposed on him in the shipper's favor. Wald-Green Food Corp. v. Acme Fast Freight, Inc., Mun.Ct.1951, 200 Misc. 679, 103 N.Y.S.2d 768, affd., App. Term 2nd Dept. 1951, 200 Misc. 687, 110 N.Y.S.2d 514.

Hence, it would not be determinative here that the earlier decision in this Court in Flanzbaum v. Klein rested on 49 U.S.C.A. § 20(11). Nevertheless it must be noted that the earlier decision, though notionally assignable to 49 U.S. C.A. § 20(11) if that subsection applied objectively, was not and did not have to be put on 49 U.S.C.A. § 20(11). The bill of lading rendered it unnecessary to be explicit, and the Court was, it would appear, consciously not explicit for the carrier liability had been unequivocally undertaken and it was found, and was undeniable, that M & M acted as agent for Klein whether Klein was an initial carrier under 49 U.S.C.A. § 20(11) or a non-consolidating forwarder undertaking a common carrier's obligations and discharging them through M & M as his agent.

Certainly if, as has been found, M & M was at fault, it was, quite apart from statute, an indemnitor to Klein. But this path of inquiry is narrowed by the adjudication that as shipper Klein is barred of relief against M & M by the valid time limitation in the bills of lading to which Klein and M & M alike became related as issuing carriers by the very ambiguity of their dealings with the incompletely filled out document and their common use of it as embodying the terms of dealing for each of them as carrier. However cruelly misleading the language of M & M's pleading, the evidence is that M & M adopted and used the bills of lading typed by Klein as its own; that appears on their faces in the Providence Bank's "paid" stamp and M & M's own identifying delivery numbers pencilled at their tops. And had M & M in fact issued other bills of lading, it is not possible that their existence would have aided plaintiff, for, whether issued to Klein as shipper or to plaintiff as shipper, the supposititious M & M bills of lading could only have served to afford M & M an adamant defense.

If it could be true that Klein's right of indemnity apart from statute first accrued in 1955 when it lost the first case and only then became action-

able, although the judgment was not paid, it could be speculated that the right could have passed to plaintiff under its execution and might have become vindicable in such an action as this. But the obstacles to this approach are insuperable. The leave to sue granted by the Appellate Division, the form of the complaint are too explicitly limited to suit upon the claim believed to exist under 49 U.S.C.A. § 20(12). Moreover, the relevant conception of indemnification, apart from statute, is rooted in damage sustained and is not thought to extend to the imposition of a liability that is undischarged by payment. Dunn v. Uvalde Asphalt Paving Co., 1903, 175 N.Y. 214, 67 N.E. 439; Schubert v. August Schubert Wagon Co., 1928, 249 N.Y. 253, 257, 164 N.E. 42, 64 A.L.R. 293; Burris v. American Chicle Co., 2d Cir., 1941, 120 F.2d 218, 223. Cf. Matter of Valstrey Service Corp. v. Board of Elections, 1957, 2 N.Y.2d 413, 161 N.Y.S.2d 52, 141 N.E.2d 565.

It is therefore concluded that plaintiff may not recover in this action.[1]

---

1. A voluntary petition in bankruptcy was filed by Klein, apparently, in 1957; there has been no discharge. Inferentially, the parties assume that the present chose in action, seized on execution in 1955, did not pass to the trustee in bankruptcy. 4 Collier, Bankruptcy 101–106, 1521 (14 ed. 1942).